1  MICHAEL J. REISER, ESQ. (SBN 133621)
   LILIA BULGUCHEVA, ESQ. (SBN 291374)
2  REISER LAW, p.c.
3  1475 N. Broadway, Suite 300
   Walnut Creek, CA 94596
4  Telephone: (925) 256-0400
   Facsimile:  (925) 476-0304
5  Email: michael@reiserlaw.com
   Email: lilia@reiserlaw.com
6
7  TYLER R. MEADE, ESQ. (SBN 160838)
   MELISSA RIESS (SBN 295959)
8  THE MEADE FIRM P.C.
   1816 Fifth Street
9  Berkeley, CA 94710
   Telephone: (510) 843-3670
10 Facsimile:  (510) 843-3679
   Email: tyler@meadefirm.com
11 Email: melissa@meadefirm.com
12
   Attorneys for Plaintiffs
13

14              UNITED STATES DISTRICT COURT

15            EASTERN DISTRICT OF CALIFORNIA

16 CHRISTOPHER B. EHRLICH and SARA      Case No.
   F. EHRLICH, individually,
17
                                        **COMPLAINT FOR:**
18            Plaintiffs,
                                        **(1) RESCISSION;**
19      v.
                                        **(2) BREACH OF CONTRACT;**
20 MARRIOTT VACATIONS
   WORLDWIDE CORPORATION, a             **(3) BREACH OF THE IMPLIED**
21 Delaware corporation; MARRIOTT       **COVENANT OF GOOD FAITH AND FAIR**
   OWNERSHIP RESORTS, INC., a           **DEALING;**
22 Delaware corporation d.b.a. Marriott
   Vacation Club International; RITZ-    **(4) BREACH OF FIDUCIARY DUTY;**
23 CARLTON DEVELOPMENT
   COMPANY, INC., a Delaware            **(5) VIOLATION OF BUSINESS &**
24 corporation; RITZ-CARLTON SALES      **PROFESSIONS CODE §§ 17200, et seq.;**
   COMPANY, INC., a Delaware            **AND**
25 corporation; RITZ-CARLTON
   MANAGEMENT COMPANY, LLC,             **(6) AIDING AND ABETTING**
26 a Delaware limited liability company; THE
   COBALT TRAVEL COMPANY, LLC, a        **JURY TRIAL DEMANDED**
27 Delaware limited liability company; and
28 DOES 1 THROUGH 50,

                              - 1 -
                           COMPLAINT

Defendants.

Plaintiffs Christopher B. Ehrlich and Sara F. Ehrlich bring this action, based upon the investigation of counsel and information and belief, against the following Defendants: Marriott Vacations Worldwide Corporation; Marriott Ownership Resorts, Inc., d.b.a. Marriott Vacation Club International; Ritz-Carlton Development Company, Inc.; Ritz-Carlton Sales Company, Inc.; Ritz-Carlton Management Company, LLC; and Cobalt Travel Company, LLC (collectively, "Defendants").

## INTRODUCTION

1.   This lawsuit concerns the sale of fractional interests in the Ritz-Carlton Club, Lake Tahoe, located in Truckee, California (the "Lake Tahoe Ritz"). This development consists of 28 residential condominiums called "Club Interest Units"[1] that were fractionalized into 336 "Club Interests" (sometimes referred to as "Fractional Units" or "fractional interests").[2]

2.   Beginning in early 2009, Defendants sold 1/12th Fractional Units to Plaintiffs, the plaintiffs in the related cases of *Reiser, et al. v. Marriott Vacations Worldwide Corporation, et al.* (Case No. 2:16-CV-00237-MCE-CKD)[3], *Bhagat, et al. v. Marriott Vacations Worldwide Corporation, et al.* (Case No. 2:16-CV-01465-MCE-CKD) and approximately 35 other buyers. The sales effort stalled as the economy deteriorated, and by 2011 Defendants devised a plan to monetize the unsold "developer inventory" of approximately 277 fractional units. However, this plan to monetize the "developer inventory" came at the expense of and caused significant injury to the Plaintiffs' property interests, as well as to the property interests of the buyers of Ritz-Carlton Destination Club Fractional Units worldwide. The monetization plan effectuated by

---

[1]   The 28 "Club Interest Units" were created on June 9, 2008 as a result of the filing by the Defendant Ritz-Carlton Development Company, Inc. of the "Declaration of Covenants, Conditions and Restrictions and Reservations of Easements for the Highlands Resort West Parcel Condominium" dated as of May 30, 2008 (the "Condominium Declaration").

[2]   The 336 "Club Interests" or "Fractional Units" were created on June 9, 2008 as a result of the filing by the Defendant Ritz-Carlton Development Company, Inc. of the "Declaration of Covenants, Conditions and Restrictions for the Highlands Resort West Parcel Club" dated as of May 30, 2008 ("Club Interest Declaration").

[3]   The numbered paragraphs of this Complaint are identical to paragraphs in the Second Amended Complaint in *Reiser v. Marriott*, except paragraphs 2, 15 and 25-48 herein, which have been modified slightly and are specific to the plaintiffs in this action.

Defendants required that the Defendants breach contractual promises, the implied covenant of good faith and fair dealing, and fiduciary duties owed to Plaintiffs (and to other Fractional Unit buyers).

3.    The "solution" that Defendants devised to solve their problem of the unsold "developer inventory" had three prongs.

4.    First, on or about November 18, 2011, Defendants announced that they had secretly de-annexed 17 of the 28 Club Interest Units from the Club Interest Declaration, and sold them as non-fractionalized, regular condominium units to an unnamed "well known developer in the Tahoe area." As a result of this secret de-annexation and sale, the number of fractional interests available for sale to potential Fractional Unit buyers was decreased by 204 Fractional Units, from 336 to 132. Among other harm, this caused a significant increase in the annual dues that Plaintiffs must pay each year, the loss of the Ritz Club "members lounge," and the loss of a substantial portion of the common area available to fractional owners.

5.    Second, on July 17, 2012, to address their problem of unsold Fractional Units at various Ritz-Carlton Destination Club properties, Defendants announced a new "external exchange affiliation" (sometimes referred to herein as a "merger") between Ritz-Carlton Destination Club (a.k.a. Ritz-Carlton Membership Program) and the Marriott Vacation Club, a much larger, less exclusive, and less expensive competing product managed, owned, and promoted by Defendants. As a result of this new affiliation, Marriott Vacation Club members can spend just as many days at the Lake Tahoe Ritz as Plaintiffs can – 21 days – and do so at a fraction of the cost. Participants in the Marriott Vacation Club pay roughly 60% of what Plaintiffs paid up front and pay roughly a third of what Plaintiffs pay in annual dues.

6.    Third, the Defendants discontinued any meaningful effort to continue to sell fractional interests at the Lake Tahoe Ritz, opting instead to market their competing Marriott Vacation Club product to Plaintiffs' detriment. The cessation of sales efforts was undertaken so that the "developer inventory" that the Defendants could not de-annex and sell outright could be utilized by the Defendants as inventory to be used by Marriott Vacation Club members, thereby causing the Ritz-Carlton Destination Club Fractional Units to become obsolete and worthless.

7.    Defendants' conduct was designed solely for the benefit of the Defendants, and in fact was injurious to the property rights of Plaintiffs, causing the market for fractional interests at the Lake Tahoe Ritz to collapse. The fractional interests that Plaintiffs purchased for premium prices are now worth nothing. Nobody will agree to buy these fractional interests when they can enjoy the same access for so much less in both purchase price and annual costs. Plaintiffs who have attempted to sell their units have been unable to do so.

8.    To add insult to injury, Plaintiffs bear a disproportionate cost of the wear and tear caused by the de-annexation of the Fractional Units as well as the flood of Marriott Vacation Club members at the Lake Tahoe Ritz because operational costs are now spread among the owners of just 59 Fractional Units rather than 366 Fractional Units that would exist if Defendants had carried through with their fiduciary obligation to market and sell all fractional interests. Plaintiffs bear this increased cost while their access to the Lake Tahoe Ritz is curtailed by the influx.

9.    The conduct described above constitutes a breach or breaches of both the standardized Purchase Agreement and the Club Interest Declaration, which the Purchase Agreement incorporated and was governed by. This conduct also breached the covenant of good faith and fair dealing implied in those agreements.

10.    Defendants, including Defendant Marriott Vacations Worldwide Corporation and its subsidiaries, have engaged in a broad pattern of self-dealing and breaching the fiduciary duties that they assumed toward Plaintiffs. Though the sources of these duties vary somewhat, they all flow from the fact that governing documents gave an entity called the "Club Interest Association" near complete control over Plaintiffs' separately deeded fractionalized interests. Just as a typical homeowners association owes a fiduciary duty to exercise its near absolute control over *common areas* for the benefit of individual condominium owners, Defendants here owed a fiduciary duty to exercise their near absolute control over *Plaintiffs' separately-deeded fractional interests* for the benefit of Plaintiffs. In each case, control over the property of another gives rise a fiduciary duty to manage that property for the benefit of its owners.[4]

---

[4]    *See Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 56 Cal.2d 329, 338 (1961) ("The key

1      11.  Ritz-Carlton Development Company, Inc. ("RC Development") assumed the Club

2  Interest Association's control-based fiduciary duty by retaining control over that association

3  through the appointment of its employees or agents to a majority of the board member positions

4  to the Club Interest Association board of directors.[5]  Ritz-Carlton Management Company, Inc.

5  ("RC Management"), an affiliate of RC Development,[6] assumed these same duties by

6  contractually agreeing with the Club Interest Association to be the manager of the fractional

7  units, with near absolute authority over almost every aspect of their use.  These fiduciary duties

8  are shared by Cobalt Travel Company, LLC ("Cobalt") because RC Management delegated its

9  sweeping authority to Cobalt such that Cobalt became RC Management's subagent.[7]  The other

10 defendants aided and abetted the breach of fiduciary duties by these three defendants.

11     12.  Defendants breached these fiduciary duties by using the Club Interest Association

12 to profit at Plaintiffs' expense while gutting the value of the fractional interests that they sold to

13 Plaintiffs.  The Defendant-controlled Club Interest Association authorized, ratified and/or

14 acquiesced to: (a) the de-annexation of the 17 units that Defendants peeled off from the

15 fractional offering and sold as condominiums; and (b) the decision to give members of the

16 Marriott Vacation Club access to the Lake Tahoe Ritz through the merger between that club and

17 the Ritz-Carlton Destination Club.  In addition, the Defendant-controlled Club Interest

18 Association steadily increased the annual dues that Plaintiffs must pay.  The inflated annual dues

19 factor in the existence of a fiduciary relationship lies in control by a person over the property of

20 another"); 34A Cal. Jur. 3d Fraud and Deceit § 13 (same); *United States v. Wilson*, 881 F.2d 596,
   599 (9th Cir. 1989) ("A fiduciary relationship will 'arise[ ] when the Government assumes ...

21 control over ... property belonging to Indians'").
   [5]    See *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*, 114 Cal.App.3d 783,

22 799-800 (1981) (holding developer owes fiduciary duties while it controls association board and
   stating, "Thus, a developer and his agents and employees who serve as directors of an association

23 . . . may not make decisions for the Association that benefit their own interests at the expense of
   the association and its members"); *Cohen v. S & S. Construction Co.*, 151 Cal.App.3d 941, 945

24 (1983) ("This fiduciary duty extends to individual homeowners, not just the homeowners
   association").

25 [6]    The RC Development signed the management agreement on May 16, 2008 as RC
   Management's sole member.

26 [7]    See *Streit v. Covington & Crowe*, 82 Cal.App.4th 441, 446, fn. 3 (2000) ("if an agent is

27 authorized by the principal to employ a subagent, the subagent owes the same duties to the
   principal as does the agent"); *Sequoia Vacuum Systems v. Stansky*, 229 Cal.App.2d 281, 287

28 (1964) ("Every agent owes his principal the duty of undivided loyalty.  During the course of his
   agency, he may not undertake or participate in activities adverse to the interests of his principal").

1  subsidize Defendants' decision to open up access to the Lake Tahoe Ritz to members of the

2  Marriott Vacation Club.

3       13.    The above conduct also violates California's Unfair Competition Law ("UCL") in

4  that Cal. Bus. & Prof. Code § 11252 prohibits developers from materially encumbering the use

5  rights of time-share purchasers without the written assent of at least 51% of the timeshare interest

6  owners other than the developer. *See* Cal. Bus. & Prof. Code §§ 17200 *et seq.*  Under the law of

7  restitution applicable to the UCL claim, Plaintiffs are entitled to all funds that Defendants

8  obtained by means of unfair competition and unlawful business practices – including the

9  substantial purchase prices that Plaintiffs paid and the tens of thousands of dollars in annual dues

10  paid thereafter.

11       14.    Plaintiffs are entitled to rescind their Purchase Contracts based on material mistake

12  of fact, whether Defendants' conduct was intentional, negligent, or entirely innocent.  In

13  rescission, Defendants must return all consideration paid to them by Plaintiffs, including the

14  purchase price for each fractional interest and all subsequent annual fees. *See* Cal. Civ. Code §§

15  1691(b)(1).  Plaintiffs are also entitled to consequential damages in rescission, including but not

16  limited to the loss of the time value of their money. *See* Cal. Civ. Code § 1692.

17  **JURISDICTION AND VENUE**

18       15.    Jurisdiction in this court is proper under 28 U.S.C. § 1332 because there is

19  diversity of citizenship and an amount in controversy greater than $75,000.  Venue is proper

20  pursuant to 28 U.S.C. § 1391 because the property at issue in this Complaint is located in this

21  district.

22  **DEFENDANTS**

23       16.    Defendant Ritz-Carlton Development Company, Inc. ("RC Development") is a

24  Delaware corporation and the seller of the fractional interests at issue.  RC Development has a

25  principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is

26  authorized to do business in California.  It is a wholly-owned Marriott subsidiary, and also is the

27  sole owner, manager, and member of Defendant Cobalt.

28

COMPLAINT

17.    Defendant Ritz-Carlton Sales Company, Inc. ("Ritz-Carlson Sales") is a Delaware corporation, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. At all relevant times, Ritz-Carlton Sales was a wholly-owned Marriott subsidiary, acted as a sales broker, and was otherwise involved in and responsible for the marketing and sale of the fractional interests at issue.

18.    Defendant Ritz-Carlton Management Company, LLC ("RC Management"), another wholly-owned Marriott subsidiary, is a Delaware limited liability company. RC Management also has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. At all relevant times, RC Management was the manager and operator of the Lake Tahoe Ritz and the other Ritz-Carlton-branded properties included in the Ritz-Carlton Membership Program.

19.    Defendant Cobalt Travel Company, LLC ("Cobalt"), formerly known as the Ritz-Carlton Travel Company, LLC, is a Delaware limited liability company, has a principal place of business at 6649 Westwood Boulevard, Suite 500, Orlando, Florida, and is authorized to do business in California. Cobalt is a wholly-owned subsidiary of RC Development. RC Management entered into an Affiliation Agreement with Cobalt pursuant to which the Lake Tahoe Ritz and by extension its various fractional owners, including Plaintiffs, became affiliated with and/or members of the Ritz-Carlton Membership Program. Cobalt is the Program Manager of the Ritz-Carlton Membership Program and also operates the reservation system through which Plaintiffs obtained use of their allotted number of days at the Lake Tahoe Ritz and obtain access to the other facilities in the Ritz-Carlton Membership Program.

20.    Defendant Marriott Ownership Resorts, Inc., d.b.a. Marriott Vacation Club International ("Marriott Ownership Resorts") is a Delaware corporation, and a wholly-owned subsidiary of Marriott. It has a principal place of business at 6649 Westwood Boulevard, Orlando, Florida, and is authorized to do business in California. Marriott Ownership Resorts was involved in and responsible for the wrongful conduct alleged herein.

21.    Defendant Marriott Vacations Worldwide Corporation ("Marriott Vacations Worldwide") is a publicly-traded Delaware corporation with a principal place of business at 6649

1    Westwood Boulevard, Orlando, Florida.  Marriott Vacations Worldwide is the parent company of

2    the other Defendants and was involved in and responsible for the wrongful conduct alleged

3    herein.

4         22.    Collectively, Marriott Ownership Resorts and Marriott Vacations Worldwide are

5    referred to herein as Marriott.

6         23.    The true names and capacities of the Defendants DOES 1 through 50, whether

7    individual, corporate, associate or otherwise, are unknown to Plaintiffs at the time of filing this

8    Complaint and Plaintiffs, therefore, sue said Defendants by such fictitious names and will ask

9    leave of court to amend this Complaint to show their true names or capacities when the same have

10   been ascertained.  Plaintiffs are informed and believe, and therefore allege, that each of the DOE

11   Defendants is, in some manner, responsible for the events and happenings herein set forth and

12   proximately caused injury and damages to Plaintiffs as herein alleged.

13        24.    Plaintiffs are informed and believe, and on that basis allege, that each Defendant

14   named in this action, including each of the DOE defendants, was the agent, ostensible agent,

15   servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate

16   of each of the other Defendants, and was at all times relevant herein acting within the course and

17   scope of his, her or its authority as agent, ostensible agent, servant, aider and abettor, co-

18   conspirator, partner, joint venturer, representative and/or associate, and with the knowledge,

19   authorization, consent, permission, and/or ratification of the other Defendants.  On information

20   and belief, all actions of each Defendant alleged herein were ratified and approved by the officers

21   and/or managing agents of each other Defendant, whether DOE or otherwise.

22                                        **PLAINTIFFS**

23        25.    Plaintiffs Christopher B. Ehrlich and Sara F. Ehrlich are competent adult residents

24   of Alamo, California.  Pursuant to a Purchase Contract they signed on or about April 30, 2010,

25   they purchased an undivided $1/12^{th}$ interest in Club Interest Unit No. 4108 for $233,100.00.

26        26.    As a condition of purchase and ownership, Plaintiffs were enrolled in the Ritz-

27   Carlton Membership Program (a.k.a. Ritz-Carlton Club) pursuant to which they were allowed

28   access to other participating resorts and clubs.

## GENERAL ALLEGATIONS

27.     Ritz-Carlton is a highly valued brand associated with the Ritz-Carlton Hotel Company, which develops, sells, operates and manages luxury properties all over the world. Over the years, the Ritz-Carlton has become the preferred hotel company among luxury hotel chains based in large part on the prestige of its brand, luxurious amenities, and outstanding service. The Ritz-Carlton brand is now owned and/or controlled by Defendant Marriott.

28.     In or about December 2009, RC Development completed the construction of Phase 1 (consisting of 28 residential Units) at the Lake Tahoe Ritz, located at 13051 Ritz-Carlton Highlands Drive, Truckee, California. A Final Time-Share Plan Public Report ("Public Report") was issued on June 12, 2008, and amended May 10, 2010.

29.     RC Development represented that it would sell 1/12th fractional interests in the 28 Club Interest Units, or in other words 336 Fractional Units. Plaintiffs reasonably believed that Defendants promised to market and sell that number, or at least a sufficient to make the Lake Tahoe Ritz fractional offering viable. Yet Defendants sold less than 60 before abandoning marketing and sales efforts. Defendants even closed the sales office at the Lake Tahoe Ritz.

30.     Next, Defendants de-annexed the 17 Club Interest Units. A November 18, 2011 notice to Plaintiffs (and other fractional owners) reads in pertinent part:

> "On behalf of the Ritz-Carlton Club, Lake Tahoe, we would like to take the opportunity to inform you that a well known developer in the Tahoe area has recently purchased 17 residences in our building to convert to whole ownership residences in the undeveloped property adjacent to the Club. The confidentiality associated with this transaction precluded us from informing you of the sale before it was finalized.... [¶] Secondly, due to the decreased number of residences that will be a part of the Club budget, there likely will be some financial impact."

31.     The cessation of all sales efforts and the de-annexation of the 17 Club Interest Units and sale of those units as non-fractionalized condominiums was a breach of promises made in: (a) the Club Interest Declaration; (b) the Purchase Agreement, which specifically incorporated the Club Interest Declaration and must be interpreted consistent with it; and (c) the Public Report.

32.     The November 18, 2011 notice also advised: "the purchase included the residence where the current Members' Lounge was located. Due to the whole ownership conversion of the residence, we are in the process of relocating the Members' Lounge and will be providing complimentary beverages while our new lounge is under construction…." The new lounge was a substandard replacement, far smaller and far less desirable than the original one.

33.     Defendants also breached their promise that fractional owners would be able to protect their substantial investments by controlling the Club Interest Association. Defendants used their control over the Club Interest Association board to accomplish the wrongful conduct alleged herein, all to Plaintiffs' detriment. Among other things, they ratcheted up the annual dues until the annual cost of the 21 days of use makes no economic sense. When annual dues are factored in, the per-night occupancy cost is approximately $1,000 for most buyers (and just a little less for the others), excluding the time value of the money they used to purchase their fractional interest.

34.     Defendants represented that Plaintiffs and other buyers would have access to sought-after resorts, such as the Ritz-Carlton Destination Club in Bachelor Gulch, Colorado and the Ritz-Carlton Destination Club in Jupiter, Florida, through the Ritz-Carlton Destination Club (a.k.a. Ritz-Carlton Membership Program). But Defendants later removed some of the most desirable resorts from this program and/or caused other facilities to remove themselves from the program. Both the Ritz-Carlton Destination Club Property at Bachelor Gulch Colorado and the Ritz-Carlton Destination Club Property at Jupiter, Florida voted to terminate their respective management agreements with the RC Management, and consequently, their affiliation agreements with the Ritz-Carlton Destination Club, as a direct result of misconduct described herein.

35.     At the same time, Defendants have diluted the exclusive nature of the Lake Tahoe Ritz and the Ritz-Carlton Membership Program through a merger with a much larger, less exclusive program. On or about July 17, 2012, Defendants announced their intention to "affiliate" the Ritz-Carlton Destination Club with the Marriott Vacation Club destinations. In 2014, Defendants used their control over Cobalt, the "Program Manager" of the Ritz-Carlton Destination Club, to effectuate this merger, which required Cobalt's agreement.

36.     Now, many thousands of Marriott Vacation Club members — who paid approximately a third of the purchase prices and pay approximately a third of the annual fees — have access to resorts that were formerly only available to Plaintiffs and other Ritz-Carlton Club members.

37.     As one would expect of rational economic actors, these new members have availed themselves of the superior Ritz-Carlton facilities. As a result of this dilution, Plaintiffs have had difficulty obtaining the full 21 days of use they purchased for each 1/12th interest.

38.     Further, as a result of the Marriott Vacation Club "merger" and the other misconduct alleged herein, Defendants have violated Cal. Bus. & Prof. Code § 11252 by "encumber[ing] the accommodations of the time-share plan in a manner that [] materially and adversely affect[s] the use rights of the [Plaintiffs] without the written assent of not less than 51 percent of the time-share interest owners other than the developer." Cal. Bus. & Prof. Code § 11252. Plaintiffs are now unable to sell their units.

39.     Fractional owners have been unable to sell their units. For example, in May 2015, Thomas F. Reiser, Jr. ("Reiser"), another fractional owner and a plaintiff in *Reiser v. Marriott*, contacted real estate agent Liza Killen ("Killen") of the Northstar Office of Tahoe Mountain Realty to inquire about selling his Fractional Unit. On May 19, 2015, Reiser emailed Killen asking: "Any resale action on the Ritz Carlton Fractionals?" On the same day, Killen responded: "Nothing. There's a winter 2 br plus den on the market for $5k. All other listings either expired or been cancelled."

40.     In May 2016, Reiser contacted a second Northstar real estate agent Sam Drury of Padden Properties to again inquire about selling his Fractional Interest. Mr. Drury replied: "Thanks for your inquiry of fractional ownerships in Northstar. . . [In the last two years], only one such property has sold from the . . . Ritz Carlton Club - a 2 bedroom, 2.5 bath residence was listed and sold for $5,000 on 17 December 2015. In my many years' experience of Northstar area real estate, this particular property may have suffered the worst of economic setbacks. Shares that sold for more than $200,000 have lost nearly ALL value. . . The only inquiries we ever receive on the

1   single sale were quickly dismissed when the buyers learned the dues amount and usage structure.

2   It is clear there's no market for this product at all." (Capitalization in the original.)

3       41.    As a result of these actions, Plaintiffs have been severely injured.  Plaintiffs must

4   continue to pay the higher annual dues or lose their use privileges and face litigation.  Selling is

5   not an option.  There is no market for these units, and certainly no way to recoup anything close

6   to the substantial purchase prices.

7       42.    Defendants have described the Membership Program as being "appurtenant" to the

8   deed, meaning it continues for as long as the corresponding ownership interest lasts.  Plaintiffs do

9   not have the option of cancelling their membership.  The Purchase Contract further provides:

10  "membership in the [Ritz-Carlton] Membership Program may not be partitioned from ownership

11  of a Club Interest."  Thus, Plaintiffs must continue to pay their annual dues (which include the

12  membership program dues) for as long as they own their property.  They cannot terminate that

13  obligation without ridding themselves of their deeds, but no one is willing to buy them, and

14  Defendants only agree to take them back when it serves their interests, and in many instances it

15  does not serve their interests to do so.

16  **SOURCES OF FIDUCIARY DUTIES**

17  **Overview**

18      43.    In a condominium without fractional units, the scope of a condominium

19  association's fiduciary duties is circumscribed by the fact that the condominium association's

20  authority covers only common areas and does not extend into control over the individual units.[8]

21  Here, however, a distinct set of governing documents establishing a *second* association, the *Club*

22  *Interest Association,*[9] and grants that entity (and by extension its designated agents, including RC

23  Management and Cobalt) authority over the separately-deeded property interests (not just

24  common areas) that each individual fractional owner purchased.  The scope of the fiduciary duties

25  at issue here is, therefore, different from the normal condominium context because the scope of

26

27  [8]   *See, e.g.,* the Condominium Declaration in this case.

28  [9]   *See* Club Interest Declaration.

1  the Club Interest Association's authority over each Plaintiffs' fractional property interest is more

2  extensive.

3      44.    The Club Interest Declaration empowers the Club Interest Association with all

4  powers necessary to ensure the proper functioning of each individual Club Interest Unit

5  (fractional unit), and the power to delegate that authority to a professional management

6  company. The "Governing Instruments" include the Declaration of Covenants, Conditions and

7  Restrictions for the Highlands Resort West Parcel Club dated May 30, 2008 ("Club Interest

8  Declaration"), the Articles of Incorporation for Highlands Resort West Parcel Club, ("Articles"),

9  the Bylaws for Highlands Resort West Parcel Club, ("Bylaws"), Rules and Regulations for

10  Highlands Resort West Parcel Club, and the Membership Program Affiliation Agreement,

11  ("Affiliation Agreement").[10]

12      45.    On May 16, 2008, the Club Interest Association formed and controlled by the

13  developer through the appointment of its employees and agents as directors,[11] entered into the

14  "Highlands Resort Club Association Operating Agreement" with the developer's affiliate, the

15  Ritz-Carlton Management Company. This operating agreement clearly establishes that the RC

16  Management is acting for the benefit and as the agent of both the Club Interest Association and

17  its members, the Plaintiffs herein. Pursuant to its contractual and statutory authority to hire

18  subagents, RC Management, in turn, delegated significant managerial authority and control over

19  Plaintiffs' use of their Club Interest Units to its sub-agent, Cobalt, which is another affiliate of

20  the developer. These agency and sub-agency arrangements give rise to fiduciary duties.[12]

21  [10]    *See* Declaration of Covenants, Conditions and Restrictions and Reservation of Easements
22  for the Highlands Resort West Parcel Club, recorded June 9, 2008, paragraph 1.53.
    [11]    Articles of Incorporation for the Nonprofit Mutual Benefit Corporation, "Highlands
23  Resort Club Association, Inc.," signed on May 5, 2008, and filed with the California Secretary of
    State on June 3, 2008, provide that the association was formed "to manage a fractional interest
24  development located in Placer County, California to be known as Ritz-Carlton Club, Lake Tahoe"
    and "To manage, operate and maintain the fractional program of a high quality, first-class resort
25  condominium in accordance with the Declarations of Covenants, Conditions and Restrictions for
    the Highlands Resort West Parcel Club."
26  [12]    *See Streit*, 82 Cal.App.4th at 446, n. 3 ("if an agent is authorized by the principal to
    employ a subagent, the subagent owes the same duties to the principal as does the agent");
27  *Sequoia Vacuum Systems*, 229 Cal.App.2d at 287 ("Every agent owes his principal the duty of
    undivided loyalty. During the course of his agency, he may not undertake or participate in
28  activities adverse to the interests of his principal").

46.     Via the Management Agreement, Affiliation Agreement, and other governing documents and the appointment by RC Development of its employees and agents to the Club Interest Association board, RC Development and its affiliates, RC Management and Cobalt, have attained near complete control over the fractional interests and appurtenant membership benefits that Plaintiffs purchased.  This sweeping control over Plaintiffs' deeded property interests, including appurtenant membership benefits, gives rise to fiduciary duties.[13]

47.     Plaintiffs retained only two powers.  The first one is limited and underscores the authority granted to Defendants: Plaintiffs retained the right to use a unit for 21 days, but only if they followed the procedures applicable to a reservation system operated by Cobalt.  Second, Plaintiffs, as members of the Club Interest Association, could vote to terminate RC Management and with it, Cobalt.  But doing so would mean the loss of the Ritz-Carlton brand attached to their fractional interests, and also result in their expulsion from the Ritz-Carlton Membership Program.

**The Developer, RC Development, Retained Control over the Association**

48.     Through the Club Interest Declaration, the developer/declarant RC Development intended to "establish a common scheme and plan for the use, enjoyment, repair, maintenance, restoration and improvement of the Club Interest Development and Common Furnishings and the interests therein conveyed" and expressly declared the governing documents to be in furtherance of "enhancing the desirability and enjoyment of the Club Interest Development, and the interest or interests therein to be conveyed."[14]

49.     RC Development and its alter egos and/or successors owe fiduciary duties to Plaintiffs because, through all relevant times herein, they have retained control over the Club Interest Association through the appointment of developer-affiliated directors to the Club Interest Association Board of Directors.  As such, the Club Interest Association and the developer, RC Development, at all relevant times herein owed Plaintiffs a fiduciary duty to operate the Club

---

[13]     *See Vai*, 56 Cal.2d at 338 ("The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another").
[14]     *See* Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for the Highlands Resort West Parcel Club, recorded June 9, 2008, page 2.

1   Interest Association and manage Plaintiffs' fractional interests for the benefit of and with loyalty

2   towards Plaintiffs, not the developer or Marriott Vacations Worldwide or any other Defendant.[15]

3   **The Management Agreement Creates a Fiduciary Duty for RC Management**

4           50.     The Club Interest Declaration, Section 4.3 provides: "The Club Interest

5   Association shall have the authority to engage and the obligation to use its best efforts to engage

6   and maintain a reputable firm as the Operating Manager for the Club Interest Development and as

7   Program Manager for the operation of the Membership Program." Indeed, given the complexities

8   involved in managing fractional units, California law *mandates* that the Club Interest Association

9   hire a professional management company, and further establishes the authority of the professional

10  management company to hire sub-agents.[16]

11          51.     On May 16, 2008, the Club Interest Association entered into the "Highlands

12  Resort Club Association Operating Agreement" with its affiliate, the RC Management. Pursuant

13  to paragraph 2 therein, captioned "Appointment and Acceptance of Operator Agency," RC

14  Management agreed "to act on behalf of the Club Association *and its members* as the exclusive

15  operating entity of the Club and to manage the daily affairs of the Club." (Emphasis added.)

16          52.     On March 19, 2010, the Club Interest Association entered into the "Highlands

17  Resort Club Association *First Amended* and Restated Operating Agreement" ("Management

18  Agreement") with its affiliate, the RC Management. Pursuant to paragraph 3 therein, captioned

19  "Appointment and Acceptance of Operator," RC Management agreed "to act on behalf of the

20  Club Association *and its members* as the exclusive operating entity of the Club and to manage

21  the daily affairs of the Club." (Emphasis added.)

22          53.     Both the original and the amended and restated Management Agreements, in

23  paragraphs 3.2 and 4.2 respectively, provide that if the "Club Association is terminated, then the

24  owners of Club Interests ("Club Interest Owners") shall, as to their separate interests, *continue to*

25  [15]   *See Raven's Cove Townhomes*, 114 Cal.App.3d at 799-800 (holding developer owes
      fiduciary duties while it controls association board and stating, "Thus, a developer and his agents
26    and employees who serve as directors of an association . . . may not make decisions for the
      Association that benefit their own interests at the expense of the association and its members");
27    *Cohen v. S & S. Construction Co.*, 151 Cal.App.3d at 945 ("This fiduciary duty extends to
      individual homeowners, not just the homeowners association").
28    [16]   *See* Cal. Bus. & Prof. Code § 11267(a)(2).

1  *be a party to this agreement and bound by the provisions hereof*, and the Operating Company

2  shall manage such interests pursuant to the provisions of this Agreement . . . ." (Emphasis

3  added.)

4      54.    Paragraph 5 of the Management Agreement, captioned "Delegation of Authority,"

5  provides: "[RC Management], on behalf of and at the expense of, the Club Association, to the

6  exclusion of all other persons including the Club Association and its members, shall have all the

7  powers and duties of the Board of Directors of the Club Association (the "Board") as set forth in

8  the Articles of Incorporation and the governing documents of the Club Association (except such

9  thereof as are specifically required to be exercised by the Board or its members) . . . ."

10      55.    In addition, the Management Agreement specifically delegated to RC

11  Management absolute control over Plaintiffs' deeded property interests, including authority over

12  the rules and regulations governing each plaintiffs' use of a fractional unit (¶ 5(L)), and all

13  authority needed to maintain the Club Interest Units, including the determination of membership

14  dues (¶ 5(I)).  In addition, the Management Agreement gave RC Management authority to

15  conduct a wide range of activities on behalf of the Club Interest Association, including

16  management of employees (¶ 5(A)); preparing the Association's budget, keeping financial

17  records, and managing funds received on behalf of the Association (¶¶ 5(H), 5(F) and 5(J)).

18      56.    Paragraph 5(S) of the Management Agreement provides RC Management with the

19  authority to:

20      "Engage a program manager through an affiliation agreement, who shall manage and

21      administer the reservation procedures and exchange program ('Program Manager') for

22      The Ritz-Carlton Club Membership Program (the 'Membership Program') through which

23      (i) all Club Interest Owners reserve the use of accommodations at the Club pursuant to the

24      Reservation Procedures . . . The Program Manager shall have the broadest possible

25      delegation of authority regarding administration of the Reservation Procedures. . . . [RC

26      Management] on behalf of the Club Association shall assess the Club Interests Owners the

27      reasonable cost (as determined by the Program Manager) of operating such Reservation

28      Procedures, which cost shall be included as part of the Member Dues."

57.     Paragraph 15 of the Management Agreement provides, "As compensation for its services hereunder, [RC Management] shall receive an annual net fee, free from all charges and expenses" of $787.86 (in 2010 dollars) "per Club Interest from the Club Interest Owners."

58.     The RC Management is the agent of the Plaintiffs based on the terms of the Management Agreement (which explicitly refers to the Management Company as the agent of the Club Association and its members), as well as by operation of law. As such, the RC Management owes Plaintiffs fiduciary duties, including the duties of loyalty and the duty to avoid self-dealing.

59.     In addition, based upon the high degree of control over Plaintiffs' Fractional Units arising from its authority, as set forth in the Management Agreement, RC Management owes Plaintiffs fiduciary duties, including a duty of loyalty and the duty to avoid self-dealing.

### The Affiliation Agreement Gives Rise to Fiduciary Duty Owed by Cobalt

60.     Pursuant to its contractual and statutory authority to hire subagents, RC Management, in turn, delegated managerial authority and control over Plaintiffs' use of their Club Interest Units to its sub-agent, Cobalt, which is another affiliate of the developer and a wholly-owned Marriott subsidiary.

61.     On May 16, 2008, Cobalt entered into "The Ritz-Carlton Club, Lake Tahoe Membership Program Affiliation Agreement" ("Affiliation Agreement") with RC Development, RC Management, and the Highlands Resort Club Association. Pursuant to the Affiliation Agreement, the Plaintiffs became affiliated with and/or members of the Ritz-Carlton Membership Program.

62.     Paragraph 1.2 of the Affiliation Agreement provides: "By acceptance of a conveyance of a Residence Interest (defined below) at the Subject Club . . . each Member is deemed to have consented to the terms and conditions of this Agreement and to have further consented to the appointment of the Association as the authorized representative to act on behalf of the . . . Member with respect to the provisions of this Agreement."

63.     Cobalt is the Program Manager of the Ritz-Carlton Club Membership Program and also operates the reservation system through which Plaintiffs obtain use of their allotted number of days at the Lake Tahoe Ritz and obtain access to the sister Ritz-Carlton Destination

1  Clubs in the Ritz-Carlton Club Membership Program.  The Affiliation Agreement, paragraph

2  7.1(a) provides: "The Program Manager (Cobalt) may, in its sole discretion, elect to affiliate other

3  locations with the Membership Program as Member Clubs or Associated Clubs from time to time.

4  Neither the Developer, Association, nor Operator shall be entitled to participate in or consent to

5  the Program Manager's decision in this regard."

6        64.     Based upon the terms of the Management Agreement and the Affiliation

7  Agreement, Cobalt is the agent or subagent of the Plaintiffs, and as such, owes Plaintiffs a

8  fiduciary duty, including a duty of loyalty and duty to avoid self-dealing.

9        65.     In addition, based upon the high degree of control over Plaintiffs' Fractional Units

10  arising from its authority as set forth in the Affiliation Agreement, Cobalt owes Plaintiffs

11  fiduciary duties, including a duty of loyalty and duty to avoid self-dealing.

12  **FIRST CAUSE OF ACTION**

13  **(Rescission, Cal. Civ. Code § 1689, Against All Defendants)**

14        66.     Plaintiffs incorporate by reference the allegations contained in the preceding and

15  subsequent paragraphs as if fully set forth in this cause of action.

16        67.     When purchasing their fractional interests, Plaintiffs justifiably understood that

17  Defendants would sell 336 fractional interests in the 28 Club Interest Units, or at least a sufficient

18  number of fractional interests to make the fractional offering viable.  A material mistake of fact

19  giving rise to a right to rescind exists by virtue of: (a) Defendants' act of de-annexing 17 Club

20  Interest Units and selling them as condominiums; and/or (b) the fact Defendants sold only a

21  fraction of the 336 promised and/or contemplated fractional interests.

22        68.     Plaintiffs further understood that the Lake Tahoe Ritz would be operated and

23  maintained as an exclusive Ritz-Carlton Club open only to fractional owners at the Lake Tahoe

24  Ritz and other properties included in the Ritz-Carlton Membership Program.  The fact Defendants

25  gave access to these properties to members of the Marriott Vacation Club also constitutes a

26  material mistake of fact giving rise to a right to rescind.

27        69.     Service of this Complaint and related pleadings on Defendants constitutes notice

28  of rescission of the contracts between Plaintiffs and Defendants.  Plaintiffs seek a return of the

1  purchase price each paid, plus all other sums paid to Defendants, including but not limited to the
2  annual dues.

3      70.   Pursuant to Cal. Civil Code § 1692, Plaintiffs are also entitled to recover the
4  consequential damages they sustained as a direct and proximate result of Defendants' conduct in
5  an amount to be determined at trial in excess of the jurisdictional threshold of this Court.

6  ### SECOND CAUSE OF ACTION

7  **(Breach of Contract Against All Defendants)**

8      71.   Plaintiffs incorporate by reference the allegations contained in the preceding and
9  subsequent paragraphs as if fully set forth in this cause of action.

10      72.   Plaintiffs entered into one or more standardized contracts with Defendants,
11  including the Purchase Contract, the Condominium Declaration, and/or the Club Declaration
12  (collectively, "the Contract").

13      73.   Plaintiffs performed all, or substantially all, of the significant things that the
14  Contract required them to do, and/or they were excused from doing those things.  All conditions
15  required by the Contract for Defendants' performance occurred and/or were excused.

16      74.   In the Contract, Defendants, and each of them, promised to sell fractional interests
17  in all 28 Club Interest Units, or in other words a total of 336 fractional interests.  Alternatively,
18  Defendants promised to sell a sufficient number of fractional interests to make the Lake Tahoe
19  Ritz fractional offering viable.

20      75.   Defendants, and each of them, materially breached the Contract by de-annexing 17
21  Club Interest Units and then converting and selling them as full-ownership condominiums.
22  Defendants further breached the Contract by selling only a fraction of the promised 336 fractional
23  interests, and/or by abandoning efforts to market and sell these fractional interests after selling or
24  60 or so of them.

25      76.   Defendants' breach of the contract has damaged Plaintiffs in an amount to be
26  proved at trial that is in excess of the jurisdictional limit of this Court.

27  ///

28  ///

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant Against All Defendants)

77.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

78.    A covenant of good faith and fair dealing is implied in the Contract by operation of law. Pursuant to this implied covenant, Defendants could not legally interfere with the rights of Plaintiffs to receive the benefits due to them under the Contract, or do anything inconsistent with any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the Contract.

79.    Defendants breached the implied covenant of good faith and fair dealing by: (a) acting in a manner that, as more fully alleged above, unfairly interfered with Plaintiffs right to receive the benefits of the Contracts; and/or (b) acted inconsistently with implied promises that Plaintiffs reasonably understood to be included in the Contract.

80.    Defendants' breach of the implied covenant of good faith and fair dealing has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against All Defendants)

81.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

82.    Defendants RC Development and Ritz-Carlton Sales, owed Plaintiffs a fiduciary duty that required them to continue marketing and selling fractional interests in the 28 Club Interest Units at the Lake Tahoe Ritz until all 336 fractional interests were sold, or at least until a sufficient number were sold to make the fractional offering viable. Defendants, and each of them, breached this fiduciary duty first by de-annexing and selling 17 of the Club Interest Units in 2011 as full-ownership condominiums, and second by ceasing to market and sell further fractional interests.

83.     In addition, RC Development and each of the other Defendants assumed fiduciary duties to directly to Plaintiffs by retaining and exercising control over the Club Interest Association, as more fully alleged in the introduction and "Source of Fiduciary Duties" sections. Defendants retained this control through the means set forth above, and by selecting their employees, representatives and/or agents to serve on the board of the Club Interest Association.

84.     Defendants, including RC Management and Cobalt, also assumed fiduciary duties to Plaintiffs by assuming almost complete control not just over the common areas, but also over the separately deeded fractionalized interests that Plaintiffs purchased.

85.     Defendants and/or their agents on the Club Interest Association Board had a duty to act with the utmost good faith in the best interests of Plaintiffs.  Defendants and/or their agents on the Club Interest Association breached this duty by advancing Defendants' interests at the expense of Plaintiffs' interests, and/or by failing to act as a reasonably careful fiduciary/board member would have acted under the same or similar circumstances.

86.     By the actions described elsewhere in this Complaint, Defendants profited at the Plaintiffs' expense in breach of their fiduciary duties.  Despite the destruction of the value of the Fractional Units, Plaintiffs continue to pay steadily increasing annual dues, much of which goes directly to Defendants in the form of lucrative "management fees" and other "reimbursements" supposedly incurred by Defendants under the management contracts, including payroll related costs.  Plaintiffs pay these management fees and reimbursements to the Defendants regardless of usage or occupancy.

87.     Due to the conduct of the Defendants described herein, the Fractional Units owned by Plaintiffs are now virtually worthless and Defendants, including Marriott Vacations Worldwide, Marriott Vacation Club International, RC Management, and Cobalt Travel Company, LLC have been unjustly enriched by the wrongful and unlawful conduct described herein.

88.     Defendants' breach of fiduciary duties has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

///

///

## FIFTH CAUSE OF ACTION

### (Violations of California's UCL Against All Defendants)

89.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

90.     The UCL prohibits, *inter alia*, business practices that violate other provisions of law. Bus. & Prof. Code § 17200. The UCL authorizes a private right of action by anyone who has suffered injury in fact and allows recovery of amounts which may be necessary to restore to any person in interest any money or property which may have been acquired by means of any practice that violates the UCL. Bus. & Prof. Code § 17203.

91.     Defendants have violated Business & Professions Code § 11252 by "encumber[ing] the accommodations of the time-share plan in a manner that [] materially and adversely affect[ed] the use rights of the [Plaintiffs] without the written assent of not less than 51 percent of the time-share interest owners other than the developer." Bus. & Prof. Code § 11252. As more specifically alleged above, Defendants' conduct has caused the value of Plaintiffs' fractional interests to collapse such that they are unable to sell at any price and thus are locked into a perpetual liability.

92.     Defendants' practices also violated the UCL's "unfair" prong in that they caused substantial injury to Plaintiffs, are not outweighed by any countervailing benefits to consumers or competition, and caused injury that Plaintiffs themselves could not reasonably have avoided.

93.     As a result of Defendants' unlawful and unfair practices alleged herein, Plaintiffs have suffered injury in fact and lost money or property and are thus entitled to full restitution.

94.     Defendants have derived substantial revenues from their unlawful and unfair business practices. Plaintiffs have been deprived of property to which they are entitled and/or in which they have a vested interest.

95.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs are entitled to an order requiring Defendants to restore to Plaintiffs all the money or property that Defendants may have acquired by means of such unfair competition.

///

### SIXTH CAUSE OF ACTION

#### (Aiding & Abetting)

#### (Against All Defendants)

96.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs as if fully set forth in this cause of action.

97.    Defendants, and each of them, aided and abetted the remaining Defendants' scheme to commit the wrongful and unlawful conduct alleged herein.

98.    The aiding and abetting Defendants had prior notice of the remaining Defendants' wrongful and unlawful activities, but nonetheless acted affirmatively to help the other Defendants perpetrate their scheme against Plaintiffs.

99.    Defendants' aiding and abetting the wrongful and unlawful conduct alleged herein has damaged Plaintiffs in an amount to be proved at trial that is in excess of the jurisdictional limit of this Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as follows:

1.    For special damages according to proof;

2.    For general damages according to proof;

3.    For restitution of all monies paid to the Defendants or their assigns, according to proof;

4.    For rescission of all agreements entered into with Defendants and the return of all consideration paid to Defendants.

5.    For an Order pursuant to Cal. Civil Code §§ 2223, 2224, and 3517 that all funds improperly obtained by Defendants are held in a constructive trust for Plaintiffs' benefit, and a further Order requiring Defendants to return such improperly-obtained funds, including all derivative profits earned, to Plaintiffs in order to prevent Defendants' unjust enrichment;

6.    For attorneys' fees and costs according to proof;

7.    For pre-judgment and post-judgment interest; and

1    8.    For such other and further relief as the Court may deem proper.

2                              **JURY DEMAND**

3        If for any reason this case is not tried by judicial reference as contractually required,

4    Plaintiffs demand a trial by jury on all issues so triable.

5

6    Dated: May 5, 2017                    THE MEADE FIRM P.C.

7                                          REISER LAW, p.c.

8

9                                          By

10                                             MICHAEL J. REISER
                                              Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28